Charlene J. Wynder, Esq. (SBN 260935)
E-mail: charlene@wynderlaw.com
WYNDER LAW INC.
540 W. Baseline Rd., Suite 16
Claremont, CA 91711
Telephone: (909) 506-4095
Facsimile: (909) 912-8347

Attorney for Plaintiff
KUI Z. MYLES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| KUI Z. MYLES<br><br>             Plaintiff,<br><br>       vs.<br><br>THE UNITED STATES OF AMERICA; DAVID MARIN; BRIAN DEMORE; FRANCIS JACKSON; ARACELI TREVINO; DAVID GASSMANN; TROY THOMPSON; STEVEN LOVETT; and DOES 1 - 50, inclusive.<br><br>             Defendants. | CASE NO.  5:19-cv-2036<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1.  **MALICIOUS PROSECUTION**<br>2.  **ABUSE OF PROCESS**<br>3.  **FALSE ARREST**<br>4.  **FALSE IMPRISONMENT**<br>5.  **INVASION OF PRIVACY**<br>6.  **NEGLIGENCE**<br>7.  **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>8.  **VIOLATION OF THE FIRST AMENDMENT (*Bivens* Claim)**<br>9.  **VIOLATION OF THE SECOND AMENDMENT (*Bivens* Claim)**<br>10. **VIOLATION OF THE FOURTH AMENDMENT (*Bivens* Claim)**<br>11. **VIOLATION OF THE FIFTH AMENDMENT (*Bivens* Claim)**<br>12. **VIOLATION OF THE FOURTEENTH AMENDMENT (*Bivens* Claim)** |

1

| | |
|---|---|
| ) | **13.** VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. §1985) |
| ) | |
| ) | |
| )) | **14.** VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.S.C. §1986) |
| ) | |
| ) | |
| ) | |
| ) | **DEMAND FOR JURY TRIAL** |

Plaintiff KUI MYLES (hereinafter "Plaintiff" or "Ms. Myles"), by and through her attorney of record, hereby alleges:

## JURISDICTION

1.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. §§1346(a)(2) and (b)(1).

## VENUE

2.     Venue is proper in the Central District of California pursuant to 28 U.S.C. 1391 and 28 U.S.C. 1402(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## COMPLIANCE WITH THE FEDERAL TORT CLAIMS ACT

3.     Plaintiff has fully complied with the provisions of 28 U.S.C. 2675 of the Federal Tort Claims Act (FTCA). On or about November 9, 2018, Plaintiff filed an individual government claim with the U.S. Department of Homeland Security (DHS) pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671, et. seq. The federal government did not respond to the claim and as such is deemed rejected by operation of law on May 9, 2019.

COMPLAINT FOR DAMAGES

# **INTRODUCTION**

4.     Plaintiff KUI MYLES is a naturalized United States citizen who was originally born in Mainland People's Republic of China (PRC). At all times relevant to this lawsuit, Plaintiff was and is a citizen of the United States and resident of the State of California. In or around July 2005, Plaintiff was hired as an Immigration Enforcement Agent (IEA) with Detention and Removal Operations (DRO) in the Los Angeles Field Office (LAFO) of the Immigration and Customs Enforcement (ICE) component of the U.S. Department of Homeland Security (DHS).

5.     At all times material to this action, Defendant UNITED STATES OF AMERICA was acting through the Immigration and Customs Enforcement (ICE) and/or the Office of Professional Responsibility (OPR) of ICE, both of the U.S. Department of Homeland Security (hereinafter, DHS or the Agency).

6.     This case involves a series of outrageous governmental actions manifesting complete disregard for the limitations of the law. The actions of the government and its agents demonstrate a systemic practice of discrimination and retaliation against Plaintiff that was approved at the highest levels. The Agency, its employees, and the individual Defendants named herein (in both their official and individual capacities) went to unbelievable lengths, abusing their official powers, in an effort to discriminate and retaliate against Ms. Myles and force her out of her position after she succeeded in discrimination actions against DHS and later reported improper conduct of her supervisor. Defendants

used their powers in pursuit of this improper goal in numerous ways, including but not limited to, revoking Ms. Myles security clearance without probable cause, fabricating a report that Ms. Myles was housing Chinese nationals without agency approval, initiating an investigation and surveillance of Ms. Myles and her family without probable cause, falsely accusing Plaintiff of a serious criminal charge, suspending Plaintiff from work without pay, violating mandatory duties to maintain confidentiality of Plaintiff's records, violating Plaintiff's right to bear arms when her service issued firearm was confiscated from her, continuing to prohibit Plaintiff from bearing service-issued and personal arms as a law enforcement officer, disregarding her personal property, failing to restore her pay-grade status, and keeping her on light duty and administrative status once Plaintiff did ultimately return to work.

7.     The government and its agents' retaliatory actions culminated with the malicious prosecution of Plaintiff in *People of the State of California v. Kui Zhang Myles*, Orange County Superior Court Case Number 14HF1561, at the direction and instigation of special agents and officers of the DHS, including but not necessarily limited to the following Defendants in their official and individual capacities: ICE Deputy Field Officer Director (at the time) DAVID MARIN, former ICE Assistant Field Office Director BRIAN DEMORE, ICE Deputy Field Officer FRANCIS JACKSON, Office of Professional Responsibility (OPR) Criminal Investigator ARACELI TREVINO, OPR Senior Special Agent DAVID GASSMANN, OPR

COMPLAINT FOR DAMAGES

Senior Special Agent TROY THOMPSON, former OPR Assistant Special Agent in Charge STEVEN LOVETT, and upon information and belief, by unknown agents of the DHS.

8.     This complaint seeks damages for among other things, malicious prosecution, abuse of process, false arrest, false imprisonment, invasion of privacy, negligence, intentional infliction of emotional distress, violation of the First, Second, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and other federal statutes. All of the foregoing claims are based upon the unlawful and tortious conduct engaged in by, among others, the aforementioned Defendants.

9.     The claims herein are brought, in part, against THE UNITED STATES OF AMERICA pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, et seq.) and 28 U.S.C. §§1346 and other federal statutes for money damages as compensation for loss of property and personal injuries that were caused by the wrongful acts and omissions of employees of the United States Government while acting within the scope of their offices and employment, under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the laws of the State of California.

10.     The aforementioned agents of the DHS set forth in paragraph 7 above are "investigative or law enforcement officers" within the meaning of 28 U.S.C. §2680(h), and thus, a claim may be pursued against the United States.

11.     Ms. Myles also alleges, upon information and belief, that the malicious conduct and false statements and allegations of the DHS agents was pursued by attorneys of the Orange County District Attorney's Office (OCDA) who may have known of the baseless nature of the allegations. If subsequent discovery proves this to be true, then the conduct of such prosecutors would constitute overt acts of co-conspirators who participated in the malicious prosecution.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.     After being hired in 2005 by DHS, Plaintiff was subjected to continuous and systematic harassment and discrimination based on her national origin and was ultimately terminated by DHS in January 2006. Plaintiff filed an Equal Employment Opportunity (EEO) complaint and requested a hearing at the Equal Employment Opportunity Commission (EEOC).  That action went to trial in *Kui Myles v. Department of Homeland Security*, EEOC Case No.   480-2006-00445X. On August 8, 2008, after a multi-day trial, Administrative Law Judge Kathleen Mulligan found DHS liable for discriminatory and retaliatory conduct against Plaintiff, resulting in whole relief for Ms. Myles including being reinstated at her position and receiving retroactive back pay and benefits, compensatory damages, compensation for emotional distress, and attorneys' fees and costs (hereinafter, the EEOC Decision).

13.     Since the EEOC Decision, despite Ms. Myles being a dedicated and loyal employee and consistently receiving "Excellent" and "Outstanding"

performance evaluations with the Agency, Plaintiff has been the target of extreme and outrageous agency-wide conduct and continuous harassment and retaliation by DHS employees in an effort to remove Ms. Myles from her position.

14.    In or around May 2013, Plaintiff reported that she was being harassed by an ICE Deportation Officer, a higher position co-worker[1]. In June and July 2013, Plaintiff reported misconduct by her first line supervisor former Supervisory Detention and Deportation Officer (SDDO) Armando Lares (Lares) that resulted in disciplinary action against him.

15.    In or around August 2013, in retaliation for the claims by Plaintiff against Lares, Lares fabricated a story to DHS whereby Lares reported, among other things, that Ms. Myles was housing Chinese nationals without DHS authorization. Lares' allegations against Plaintiff were fabricated and were entirely false.

16.    Defendants DHS OPR Senior Special Agent DAVID GASSMANN ("GASSMANN"), DHS OPR Criminal Investigator ARACELI TREVINO ("TREVINO"), and DHS OPR Senior Special Agent Troy Thompson ("THOMPSON") were assigned to investigate Ms. Myles' purported misconduct under the supervision of former OPR Assistant Special Agent in Charge STEVEN LOVETT ("LOVETT"). From approximately August 2013 to May 2014, they

---

[1] It should be noted that as of the date of this Complaint, the IEA position has been eliminated at the Agency and all former IEAs are now all Deportation Officers.

COMPLAINT FOR DAMAGES

enlisted a team of DHS agents to investigate Plaintiff, which included eight (8) months of active surveillance undertaken by at least five (5) different agents and extensive video footage of Ms. Myles and her family.  The surveillance and video-recording of Ms. Myles and her family at work and home were conducted without probable cause.  The investigation and surveillance of Plaintiff established that Lares' allegations against Plaintiff were fabricated and entirely false.

17.     Unable to find any misconduct on the part of Plaintiff, GASSMANN, THOMPSON, and TREVINO, under the direction of LOVETT, began to manufacture evidence to support a criminal case against Plaintiff alleging she purposefully lied about overtime hours without Agency approval. Plaintiff is informed and believes that GASSMANN, THOMPSON, and TREVINO'S efforts to concoct evidence to support a criminal case was directed by and encouraged by all levels of DHS management from DHS ICE Los Angeles Field Office and DHS OPR, including but not limited to LOVETT, former ICE Assistant Field Office Director BRIAN DEMORE, and ICE Deputy Field Office Director (at the time) DAVID MARIN.

18.     Plaintiff is informed and believes that the U.S. Attorney's Office declined to criminally charge Plaintiff because DHS' allegations against her were fabricated by DHS employees. As a result, Plaintiff is informed and believes that GASSMANN presented the case to the Orange County District Attorney's Office (OCDA) for filing. DHS, by and through its employees, and as adopted by

8

management, knowingly made misrepresentations to federal prosecutor(s) and the OCDA in order to induce such agencies to initiate and maintain a criminal case and felony charge against Ms. Myles.

19.     On December 15, 2014, in *The People of the State of California v. Kui Z. Myles,* Orange County Superior Court Case No. 14CF4002, the OCDA filed a criminal complaint against Plaintiff in state court, alleging violation of California Penal Code Section 487(b)(3), one count of grand theft by an employee (the "State Criminal Case"). The charge and allegations against Plaintiff were fabricated by DHS employees and were entirely false. The conduct and actions giving rise to the grand theft claim arose from and were based upon fabricated allegations of misconduct by GASSMANN, TREVINO and THOMPSON.

20.     On December 16, 2014, GASSMANN and THOMPSON led Ms. Myles into believing that she would be meeting with them "for a talk." Instead, GASSMANN and THOMPSON accosted Ms. Myles at her work place, interrogated her, arrested her, and transported and booked her into the Santa Ana Jail.  GASSMANN and THOMPSON knew that the charge of grand theft was baseless and maliciously treated Ms. Myles as a criminal in order to embarrass her, harm her, humiliate her, and retaliate against her at her job.

21.     In light of the nature of the charge and the circumstances of her arrest, Plaintiff became the subject of news reports and press releases by the OCDA, in which false statements were published about Ms. Myles stating she acted illegally,

took advantage of her public position, and was unethical. As a result of these baseless news reports, Plaintiff was humiliated and ostracized and suffered significant anxiety and distress.

22.    On December 16, 2014, to add insult and more injury, DHS Deputy Field Officer FRANCIS JACKSON recommended Plaintiff's indefinite suspension without pay and termination. On January 26, 2015, DHS Deputy Field Office Director DAVID MARIN placed Plaintiff on indefinite suspension without pay as a result of the State Criminal Case. Knowing the allegations against her to be false, DHS agents, including JACKSON and MARIN, recommended, initiated and maintained Ms. Myles' indefinite suspension from work without pay, with intentional malice and without probable cause, for almost three (3) years.

23.    The State Criminal Case was maintained for an almost three (3) year period on the basis of fabricated claims by GASSMANN, THOMPSON, and TREVINO and the perjured testimony of GASSMANN, DEMORE, and other co-workers. Plaintiff is further informed and believes that DHS, through its employees, and as adopted by management, tampered with witnesses, committed perjury, committed obstruction, and made materially false statements in support of maintaining the State Criminal Case.

24.    As a result of the almost three (3) year State Criminal Case and work suspension, Plaintiff underwent significant financial hardship. Ms. Myles was forced to sell her property, exhaust her savings, and withdraw her retirement in

COMPLAINT FOR DAMAGES

order to fund the cost of the State Criminal Case and to help support her family financially during this time period. Additionally, Plaintiff experienced significant emotional distress, suffering and continuing to suffer emotional and physical distress, humiliation, shame, despair, embarrassment, depression, physical and mental pain and suffering and anguish, loss of earnings, loss pay grade, loss of security clearance at her job, loss of the right to carry service-issued and personal firearms as a law enforcement officer, loss of statuses and future status, and loss of other benefits.

25.    Plaintiff vigorously contested the State Criminal Case. On November 13, 2017, and after almost three (3) stressful and emotionally overwhelming years, Plaintiff was exonerated and the dismissal was filed by the OCDA and granted by the Court.

26.    Upon dismissal of the criminal action, Plaintiff returned to duty on November 20, 2017. It should be noted, however, that despite her exoneration and return to duty, Ms. Myles has continued to suffer retaliation and harm at the hands of the Agency, including but not limited to failing to restore her loss earnings, pay grade, security clearance, and the right to carry service-issued and personal firearms, resorting Ms. Myles to low level administrative status and light duty and the inability for additional opportunities (including promotion and financial) at the Agency.

COMPLAINT FOR DAMAGES

27.    Plaintiff is informed and believed that DHS, by and through its employees, management and other(s) to be discovered, intentionally, maliciously, and in bad faith, falsified claims of Ms. Myles' misconduct, specifically the allegations of grand theft. Plaintiff is informed and believes DHS, by its employees and as adopted by management, conspired to take adverse actions against Ms. Myles which included revoking Ms. Myles security clearance without probable cause, the suspension from work without pay, initiating the investigation and surveillance of Ms. Myles and her family, instituting and maintaining a criminal case against her, unlawfully disclosing and/or disseminating personal and confidential information about Ms. Myles, and disregarding Ms. Myles' personal items which were stored at work during the pendency of the State Criminal Case, and continue to take adverse actions against her in furtherance of efforts to remove Plaintiff from her job, retaliate against her, harass her, humiliate her, discourage her, demoralize her, and embarrass her, as a result of her protected actions and her national origin.

## **FIRST CAUSE OF ACTION**

## **MALICIOUS PROSECUTION**

### **(By Plaintiff Against the United States of America and Does 1-50)**

28.    Plaintiff hereby realleges and incorporates the allegations set forth above as though fully set forth herein.

COMPLAINT FOR DAMAGES

29.    Defendant UNITED STATES OF AMERICA, by and through its employees at the Agency and as adopted by Agency management, knowingly made false allegations to the OCDA regarding Plaintiff's conduct described herein that directly led to her criminal prosecution.

30.    Defendant's agents instigated, encouraged, and were actively involved in causing Plaintiff to be prosecuted in the Orange County Superior Court criminal action on the felony charge of grand theft and maintaining that action for an almost three (3) year period.

31.    Multiple Agency employees testified against Plaintiff, committed perjury by lying under oath about the charge against Plaintiff, or otherwise participated during the criminal proceedings. Plaintiff is informed and believed that these Agency employees did so under directives by Agency management.

32.    Defendant and its agents did not have probable cause nor did they reasonably believe that Plaintiff was guilty of the charge against her. Defendant and its agents knew when they approached the OCDA about filing the state criminal action that Plaintiff was factually innocent of the charge. The prosecution against Plaintiff was not supported by probable cause.

33.    Defendant and its agents acted primarily for a purpose other than that of bringing Plaintiff to justice. The conduct engaged in by Defendant, by and through it agents, and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, and to intimidate,

13

harass and embarrass Plaintiff in order to remove her from her position and for all of the reasons set forth above.

34.    The criminal action terminated and ended in Plaintiff's favor when the State Criminal Case was dismissed on November 13, 2017.

35.    Because these acts and events were undertaken and caused by investigative and law enforcement agents of the United States, the United States Government is liable for all damages caused by such acts, as provided by 18 U.S.C. §2680(h).

36.    The actions of the individuals described herein constitute malicious prosecution under applicable law.

37.    As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

COMPLAINT FOR DAMAGES

38.    As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

## SECOND CAUSE OF ACTION

## ABUSE OF PROCESS

**(By Plaintiff Against the United States of America and Does 1-50)**

39.    Plaintiff hereby realleges and incorporates the allegations contained above as though fully set forth herein.

40.    In or around August 2013, Lares fabricated that Ms. Myles was housing Chinese nationals without DHS authorization, prompting an extensive investigation and surveillance of Plaintiff and her family based upon entirely false allegations.

41.    GASSMAN, THOMPSON, and TREVINO manufactured evidence to support a criminal case against Plaintiff alleging she purposefully lied about overtime hours without DHS approval.

42.    Plaintiff is informed and believes that Agency employees knowingly made false allegations against Plaintiff in order to urge the U.S. Attorney's Office (USAO) to file a criminal charge against her.

43.    In or around August 2014, Defendant UNITED STATES OF AMERICA, by and through its employees, and as adopted by Agency management, approved, authorized, ratified and participated in urging the OCDA to file the State Criminal Case against Plaintiff based on the charge of grand theft.

44.    GASSMAN and THOMPSON obtained a state arrest warrant for Plaintiff based upon false allegations that Plaintiff lied about overtime hours without DHS approval.

45.    On December 16, 2014, GASSMAN and THOMPSON led Ms. Myles into believing that she would be meeting "for a talk." Instead, GASSMAN and THOMPSON accosted Ms. Myles at her work place, interrogated her, arrested her, and transported and booked her into the Santa Ana Jail, and did so knowingly based on false allegations against her.

46.    Multiple Agency employees, including GASSMANN and DEMORE, testified against Plaintiff, committed perjury by lying under oath about the charge against Plaintiff, or otherwise participated during the criminal proceedings.

47.    On January 26, 2015, the Agency placed Plaintiff on indefinite suspension without pay as a result of the State Criminal Case, knowing the allegations against her in the State Criminal Case were false.

48.    Defendant's agents wrongfully and improperly utilized the claims and investigation process, law enforcement process, suspension process and criminal prosecution, without due process, and primarily for an improper purpose other than

16

for what those legal processes were designed to achieve.

49.     Defendant's agents intentionally used these legal procedures and process, without probable cause, and with malicious intent, in order to harass, threaten, and intimidate Plaintiff and remove her from her position.

50.     The conduct engaged in by Defendant and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above.

51.     Because these acts and events were undertaken and caused by investigative and law enforcement agents of the United States, the United States Government is liable for all damages caused by such acts, as provided by 18 U.S.C. §2680(h).

52.     The actions of the individuals described herein constitute abuse of process under applicable law.

53.     As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that

17

also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

54.     As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

## THIRD CAUSE OF ACTION

## FALSE ARREST

### (By Plaintiff Against the United States of America and Does 1-50)

55.     Plaintiff hereby realleges and incorporates the allegations contained above as though fully set forth herein.

56.     Defendant, through its agents, knowingly and maliciously gave the OCDA false or materially incomplete and selective information about Plaintiff, of a character that could be expected to cause her arrest.

57.     Plaintiff was factually innocent of the state charge against her. Defendant knew the truth, and thus did not have probable cause to believe that Plaintiff committed the charge against her by the OCDA.

58.     Through the above-described conduct, Defendant falsely arrested, transported, and detained Plaintiff at the Santa Ana Jail. Defendant intended to stop, arrest, detain, confine, restrain, and/or seize Plaintiff without her consent, without lawful authority, and without probable cause.

59.     The actions of the individuals described herein constitute false arrest under applicable law.

60.     Because these acts and events were undertaken and caused by investigative and law enforcement agents of the United States, the United States Government is liable for all damages caused by such acts, as provided by 18 U.S.C. §2680(h).

61.     The conduct engaged in by Defendant and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above.

62.     As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that

19

also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

63.    As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

## **FOURTH CAUSE OF ACTION**

## **FALSE IMPRISONMENT – 28 U.S.C. §2680**

### **(By Plaintiff Against the United States of America and Does 1-50)**

64.    Plaintiff hereby realleges and incorporates the allegations contained above as though fully set forth herein.

65.    Defendant UNITED STATES OF AMERICA, through its agents, knowingly and maliciously gave the OCDA false or materially incomplete and selective information about Plaintiff, of a character that could be expected to cause her arrest.

66.    Plaintiff was factually innocent of the state charge against her. Defendant knew the truth, and thus did not have probable cause to believe that Plaintiff committed the charges against her by the OCDA.

67.    Through the above-described conduct, Defendant falsely arrested, transported, and detained Plaintiff at the Santa Ana Jail. Plaintiff's DNA sample was taken thereat. Defendant intended to stop, arrest, detain, confine, restrain, harass, and/or seize Plaintiff without her consent, without lawful authority, and without probable cause.

68.    The actions of the individuals described herein constitute false imprisonment under applicable law.

69.    Because these acts and events were undertaken and caused by investigative and law enforcement agents of the United States, the United States Government is liable for all damages caused by such acts, as provided by 18 U.S.C. §2680(h).

70.    The conduct engaged in by Defendant and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above.

71.    As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and

disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

72.     As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

## FIFTH CAUSE OF ACTION

## INVASION OF PRIVACY

**(By Plaintiff Against the United States of America and Does 1-50)**

73.     Plaintiff hereby realleges and incorporates the allegations contained above as though fully set forth herein.

74.     Defendant, though the Agency and its agents, consciously disregarded Plaintiff's rights and intentionally and unreasonably intruded into Plaintiff's

seclusion and right to be left alone in her own affairs. Defendants foreclosed privacy by intruding into every sphere of Plaintiff's work and personal life as described herein below. The intrusion into private matters as described herein would be highly objectionable to a reasonable person.

75.     From approximately August 2013 to May 2014, GASSMANN, TREVINO, THOMPSON, and LOVETT did, instructed, authorized, and/or ratified eight (8) months of active surveillance undertaken of Ms. Myles and her family without probable cause to do so.  The surveillance and video-recording of Ms. Myles and her family at work and home were conducted in an effort to manufacture evidence to support a criminal charge against her. This included, among other things, GASSMANN and THOMPSON visiting her child's daycare facility, interviewing daycare personnel as part of a purported investigation of Ms. Myles, and requesting records from the daycare facility, without probable cause or any other legitimate reason to do so except to retaliate against Plaintiff, harass her, harm her, discredit her, intimidate her, and embarrass her.

76.     Additionally, without a warrant, GASSMANN acquired private banking information and records of Plaintiff and her husband in an effort to manufacture a criminal charge against her. GASSMANN did so without a warrant and without probable cause or any other legitimate reason to do so except to retaliate against Plaintiff, harass her, harm her, discredit her, intimidate her, and embarrass her.

COMPLAINT FOR DAMAGES

77.    Plaintiff had a reasonable expectation of privacy in her own home in that she kept personal property there and her family, including her husband, child, and parents entrusted their privacy to Plaintiff. Plaintiff also had a reasonable expectation of privacy in the conduct of her own personal affairs and finances, including what she did in her own time, what she paid for, caring for and providing for the care of her child. Defendant, through its agents and employees, did not have a reasonable belief that Plaintiff was committing a crime or violating agency policy or otherwise have a legitimate basis to expend extensive agency resources on the long-term surveillance of Plaintiff and her family.

78.    Defendant, through the Agency and its agents, invaded Plaintiff's privacy by conducting eight months of surveillance of Plaintiff's work and personal life without probable cause to discriminate and retaliate against her. Defendant, though the Agency and its agents, without warrants, jurisdiction or lawful purpose, invaded Plaintiff's privacy with surveillance, following Plaintiff to her home and work and spying on her and harassing her, encouraging prying by other Agency employees, reviewed her financial affairs without basis, and interviewed third parties about her personal on-goings.

79.    Additionally, in or around October 2015, Agency personnel disclosed in writing to various parties personally identifiable information of Plaintiff in the form of her California Driver's License Number, in violation of 18 U.S.C. 2722. Plaintiff had a reasonable expectation of privacy that Agency personnel would

not disclose her personally identifiable information in violation of law. Plaintiff is informed and believes and based thereon alleges that Defendant, through its agents, disclosed her personally identifiable information, in violation of her rights, and in order to further discriminate and retaliate against her.

80.    The Agency's policies and customs allowed the conduct and violated Plaintiff's rights. Defendant, through the Agency and its agents, acted under the color of law. GASSMANN, TREVINO, THOMPSON, LOVETT, and other Agency employees' invasive actions were performed in the course and scope of their employment with the Defendant.

81.    Defendant's conduct, policies and customs were the direct and proximate cause of injury and harm and damages to Plaintiff, for which Defendant is liable. Liability includes general damages and special damages to be proven at trial. Defendant, through the Agency and its agents,  disrupted Plaintiff's domestic and work life. Plaintiff suffered mental anguish, grief, despair, indignation, public humiliation, embarrassment, fear, shock, and agitation. Plaintiff lost safety and seclusion, and suffered reputation injury. Reputation damage contributed to loss of earning capacity and other damage. Plaintiff suffered adverse work conditions and economic damages.

82.    Defendant, and its agents and employees, knew or should have known about GASSMANN, TREVINO, THOMPSON, and LOVETT's unwelcome conduct such that the Defendant should have been able to take timely action both

before, during, and after the surveillance to either prevent or mitigate the invasion of privacy. Defendant failed to take appropriate and timely action to correct the abusive behavior and environment to prevent or mitigate the harm to the Plaintiff.

83.    The actions of the individuals described herein constitute invasion of privacy under applicable law.

84.    The conduct engaged in by Defendant and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above.

85.    As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

COMPLAINT FOR DAMAGES

86.     As a further and direct and proximate consequence of Defendants'
conduct more specifically set forth herein, Plaintiff was required to retain the
services of legal counsel to prosecute this case. Plaintiff has reasonably and
necessarily incurred legal fees, and is informed and believed she will reasonably
and necessarily incur legal fees in the future in an amount to be proven at the time
of trial.

## SIXTH CAUSE OF ACTION

## NEGLIGENCE

**(By Plaintiff Against the United States of America and Does 1-50)**

87.     Plaintiff hereby realleges and incorporates the allegations contained
hereinabove as though fully set forth herein.

88.     Defendant was at the very least, negligent in refusing to investigate
and/or screen, hire, train, retain, supervise, report, discipline, monitor, control and
terminate (when justified) its agents, including Defendants GASSMANN,
TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, MARIN and others,
given the foreseeability of harm to Plaintiff and other employees that may be
similarly situated, the extended time period in which Plaintiff has suffered and
continues to suffer harm by the individual Defendants, the degree of certainty that
Plaintiff suffered severe emotional and psychological harm, the closeness of the
connection between Defendants' conduct and the harm suffered, the moral blame
attached to Defendants' conduct, the policy of preventing future harm to Plaintiff,

the limited burden on Defendants, the consequences to the community of imposing a duty on Defendants to exercise care with the resulting liability for breach, the availability, cost and prevalence of insurance for the risk involved, the extent of Defendant's powers, the role imposed upon Defendants by law and the limitations imposed on Defendants by applicable budgets, if any.

89.    Defendant had a legal duty to Plaintiff to investigate and/or screen, hire, train, retain, supervise, report, discipline, monitor, control and terminate (when justified) its agents, including Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, MARIN in order to prevent the type of harm Plaintiff suffered here.

90.    Defendants breached their duty to Plaintiff by failing to properly screen, hire, train, retain, supervise, report, discipline, monitor, control and terminate (when justified) its employees, including Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, MARIN and others.

91.    The conduct engaged in by Defendant and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above.

92.    The actions of the individuals described herein constitute negligence under applicable law.

COMPLAINT FOR DAMAGES

93.     As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

94.     As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

///

///

///

COMPLAINT FOR DAMAGES

## SEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**(By Plaintiff Against the United States of America and Does 1-50)**

95.    Plaintiff hereby realleges and incorporates the allegations contained hereinabove as though fully set forth herein.

96.    The actions of Defendant, through its agents, as set forth herein throughout were outrageous, intentional, and malicious, and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, physical and emotional distress.

97.    As a proximate result of the acts of Defendant and its agents, Plaintiff suffered severe emotional distress in the form of fear, nervousness, anxiety, worry, humiliation, and indignity. The conduct by the Agency created an environment extremely detrimental to Plaintiff's emotional and physical health. By reason of the acts alleged above, Plaintiff was subjected to fear of further acts of intimidation directed unlawfully toward her, fear of imprisonment, and continues to live in fear of further unlawful acts of intimidation and harassment against her.

98.    The actions of the individuals described herein constitute intentional infliction of emotional distress under applicable law.

99.    The conduct engaged in by Defendant, through its agents and employees and described above was outrageous, unreasonable and shocks the

conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above.

100.   As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

101.   As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

///

COMPLAINT FOR DAMAGES

## EIGHTH CAUSE OF ACTION

## VIOLATION OF THE FIRST AMENDMENT

## [Right to Free Speech]

### (By Plaintiff Against Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, MARIN and Does 1-50)

102.   Plaintiff hereby realleges and incorporates the allegations contained hereinabove as though fully set forth herein.

103.   This cause of action is brought pursuant to the authority of *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. (*Crawford-El v. Britton*, 523 U.S. 574, 592).

104.   Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, MARIN, and Does 1-50, violated Plaintiff's right to free speech guaranteed by the First Amendment of the United States Constitution in retaliation for Plaintiff speaking out on the following, as described above: (a) the systematic harassment and national origin discrimination Ms. Myles experienced in 2005, of which she ultimately prevailed in an administrative proceeding as reflected by the EEOC decision, (b) Plaintiff's harassment by a Deportation Officer as reported by her in or around May 2013; and (c) misconduct

by Plaintiff's first line supervisor Armando Lares in or around June and July 2013, which resulted in Lares' discipline.

105.  Defendants' retaliatory conduct against Plaintiff significantly increased after Plaintiff reported Lares in 2013, after which Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, MARIN,  and Does 1-50, have engaged and continue to engage in a continuous and ongoing course of conduct designed and intended to retaliate against Plaintiff for the reports of harassment, discrimination, and misconduct reported by Plaintiff.

106.  The retaliation by Defendants escalated one-month after Plaintiff reported LARES for misconduct.  In August 2013, Lares fabricated a story to DHS whereby he reported that Ms. Myles was housing Chinese nationals without DHS authorization, launching an eight (8) month surveillance and investigation of Plaintiff by GASSMAN, TREVINO, and THOMPSON, under LOVETT's supervision. Lares' allegations against Plaintiff were fabricated and were entirely false and were made solely as a retaliatory action against Plaintiff for her reporting of Lares' misconduct.

107.  From approximately August 2013 to May 2014, GASSMAN, TREVINO, and THOMPSON, under LOVETT's supervision, enlisted a team of DHS agents to investigate Plaintiff, which included eight (8) months of active surveillance undertaken of Ms. Myles and her family at work and home were

COMPLAINT FOR DAMAGES

conducted without probable cause.  GASSMAN, TREVINO, THOMPSON, and LOVETT organized, approved, authorized, ratified and personally participated in continuous and ongoing surveillance of Plaintiff for obvious harassment purposes. The investigation and surveillance of Plaintiff established that LARES' allegations against Plaintiff were fabricated and entirely false.

108.   Unable to find any misconduct on the part of Plaintiff, GASSMANN, THOMPSON, and TREVINO, under the direction of LOVETT, manufactured evidence to support a criminal case against Plaintiff alleging she purposefully lied about overtime hours without DHS approval. Plaintiff is informed and believes that GASSMANN, THOMPSON, and TREVINO's efforts to concoct evidence to support a criminal case was directed by and encouraged by all levels of DHS management including but not limited to DEMORE, MARIN, JACKSON, and LOVETT.

109.   Plaintiff is informed and believes that the U.S. Attorney's Office declined to criminally charge Plaintiff because DHS' allegations against her were fabricated by GASSMAN, THOMPSON, and TREVINO. As a result, Plaintiff is informed and believes that GASSMANN presented the case to the OCDA for filing. GASSMANN, as directed by and encouraged by all levels of DHS management including but not limited to DEMORE, MARIN, JACKSON, and LOVETT, knowingly made misrepresentations to federal prosecutor(s) and the OCDA in order

COMPLAINT FOR DAMAGES

to encourage and induce such agencies to initiate and maintain a criminal case and felony charge against Ms. Myles.

110.   On December 15, 2014, the OCDA filed the State Criminal Case at the urging of GASSMANN.   The State Criminal Case would not have been filed without the urging and fabricated allegations of misconduct by GASSMANN, TREVINO AND THOMPSON. GASSMANN, TREVINO AND THOMPSON knowingly made false allegations to the OCDA regarding Plaintiff's conduct described herein that directly led to her criminal prosecution.

111.   On December 16, 2014, GASSMANN and THOMPSON accosted Ms. Myles at her work place, interrogated her, arrested her, and transported and booked her into the Santa Ana Jail.  In light of the nature of the charge and the circumstances of her arrest, Plaintiff became the subject of news reports and press releases by the OCDA, in which false statements were published about Ms. Myles stating she acted illegally, took advantage of her public position, and was unethical. GASSMAN, TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, and MARIN, organized, approved, authorized, ratified and personally participated in causing the State Criminal Case  and Plaintiff's arrest without probable cause and based on false allegations in order to retaliate against Plaintiff, harass her, embarrass her, and remove her from her position.

112.   In an effort to further retaliate against Plaintiff, on December 16, 2014, JACKSON   recommended   Plaintiff's   indefinite   suspension   without   pay   and

COMPLAINT FOR DAMAGES

termination, knowing that Plaintiff's arrest and State Criminal Case were based on false allegations.

113.   Additionally, on December 16, 2014, in an effort to further retaliate against Plaintiff, MARIN revoked Plaintiff's authorization to carry a service-owned or personally owned weapon during duty and non-duty hours. MARIN had no authority to unilaterally revoke Plaintiff's right to carry weapons, particularly the right to carry her own personal weapon. This action exceeded the scope of his powers and was an abuse of his authority to the detriment of Plaintiff. Plaintiff was required to surrender all service-owned firearms.   MARIN's revocation of Plaintiff's right to carry her service-owned and personal weapons were done in order to retaliate against Plaintiff, harass her, harm and humiliate Plaintiff as a law enforcement officer.

114.   On January 26, 2015, in an effort to further retaliate against Plaintiff, MARIN placed Plaintiff on indefinite suspension without pay as a result of the State Criminal Case, knowing that Plaintiff's arrest and State Criminal Case were based on false allegations. Knowing the allegations against Plaintiff to be false, JACKSON and MARIN, recommended, initiated and maintained Ms. Myles' indefinite suspension from work without pay for almost three (3) years in order to retaliate against Plaintiff, harass her, embarrass her, and remove her from her position.

115.   The State Criminal Case was maintained for an almost three (3) year period on the basis of fabricated claims by GASSMANN, THOMPSON, and TREVINO and the perjured testimony of GASSMANN, DEMORE, and other co-workers. Plaintiff is further informed and believes that under the direction of Agency management, various Agency employees tampered with witnesses, committed perjury, committed obstruction, and/or made materially false statements in support of maintaining the State Criminal Case in order to retaliate against Plaintiff, harass her, embarrass her, and remove her from her position.

116.   GASSMAN, TREVINO, THOMPSON, LOVETT, and/or DEMORE instigated, encouraged, and were actively involved in causing Plaintiff to be prosecuted in the State Criminal Case on the felony charge of grand theft and maintaining that action for an almost three (3) year period, knowingly doing so based on false allegations, in order to retaliate against Plaintiff, harass her, embarrass her, and remove her from her position.

117.   The conduct engaged in by Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, JACKSON, MARIN, DEMORE and Does 1-50, and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above and to deprive her of her constitutional right to freedom of speech.

COMPLAINT FOR DAMAGES

118. The conduct of Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, JACKSON, MARIN, DEMORE and Does 1-50, is and was malicious, justifying an award of punitive or exemplary damages against Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, MARIN, and Does 1-50, for the sake of example and by way of punishing them.

119. As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

120. As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably

and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

## NINTH CAUSE OF ACTION

## VIOLATION OF THE SECOND AMENDMENT

### [Right to Bear Arms]

**(By Plaintiff Against Defendant MARIN and Does 1-50)**

121.   Plaintiff hereby realleges and incorporates the allegations contained hereinabove as though fully set forth herein.

122.   This cause of action is brought pursuant to the authority of *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). The Second Amendment to the Constitution of the United States guarantees "the right of the people to keep and bear Arms, shall not be infringed."

123.   Defendant MARIN and Does 1-50 violated Plaintiff's rights guaranteed by the Second Amendment to the United States Constitution. At all relevant times, Plaintiff was an Immigration Enforcement Agent for DHS, a law enforcement officer entrusted with the vital role of local and national security and whose life and safety is dependent, in part, on the carrying of and training with a service-issued and/or personal firearm.

124.   However, on December 16, 2014, in an effort to retaliate against Plaintiff, MARIN revoked Plaintiff's authorization to carry a service-owned or

personally owned weapon during duty and non-duty hours. At that time, Plaintiff was required to surrender all service-owned firearms.  MARIN's revocation of Plaintiff's right to carry her service-owned and personal weapons were done in order to retaliate against Plaintiff, harass her, harm, and humiliate Plaintiff as a law enforcement officer.

125.   Also, although Plaintiff returned to work on November 20, 2017, MARIN or DHS have still not authorized Plaintiff to carry and/or train with a service-owned firearm or her own personal firearm. The inability for Plaintiff to carry and/or train with a service-owned firearm or her own personal firearm as a law enforcement officer also has significant financial consequences. Without the requisite right to carry a firearm, Plaintiff cannot undergo training with said firearm(s), drastically limiting her abilities to fulfill her work duties and accept other tasks, roles, and opportunities within the Agency that would offer additional financial benefits. By failing to restore Defendants right to bear arms as part of her job, Plaintiff has been stripped of a quintessential part of fulfilling her duties as a law enforcement officer and has been reduced to administrative status. MARIN and other Agency Officials have failed to restore Plaintiff's right to carry and train with a weapon in order to retaliate against Plaintiff, harass her, harm, and humiliate Plaintiff as a law enforcement officer.

126.   The conduct engaged in by Defendants MARIN and Does 1-50 and described above was outrageous, unreasonable and shocks the conscience. Their

purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above and to deprive her of her constitutional right to bear arms.

127.   The conduct of Defendants MARIN and Does 1-50 is and was malicious, justifying an award of punitive or exemplary damages against Defendants MARIN and Does 1-50 for the sake of example and by way of punishing them.

128.   As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

129.   As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and

COMPLAINT FOR DAMAGES

necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

## TENTH CAUSE OF ACTION

## VIOLATION OF THE FOURTH AMENDMENT

## [Right Against Unreasonable Searches and Seizures and the Right to Privacy]

## (By Plaintiff Against GASSMANN, TREVINO, THOMPSON, LOVETT, DEMORE, and Does 1-50)

130.   Plaintiff hereby realleges and incorporates the allegations contained hereinabove as though fully set forth herein.

131.   This cause of action is brought pursuant to the authority of *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

132.   The Fourth Amendment to the Constitution of the United States guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,  shall not be violated, and no warrants shall issue, but upon probable, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

133.   Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT, DOES 1-50 violated Plaintiff's rights guaranteed by the Fourth Amendment to

the United States Constitution by organizing, approving, authorizing, ratifying and conducting the following unlawful and unconstitutional searches and seizures, as hereinafter alleged, in retaliation for Plaintiff's reports to her employer of harassment, discrimination, and misconduct, as detailed above. Said Defendants further consciously disregarded Plaintiff's rights and intentionally and unreasonably intruded into Plaintiff's seclusion and right to privacy in her own affairs.

134. From approximately August 2013 to May 2014, GASSMANN, TREVINO, THOMPSON, and LOVETT did, instructed, authorized, and/or ratified eight (8) months of active surveillance undertaken of Ms. Myles and her family without probable cause to do so. The surveillance and video-recording of Ms. Myles and her family at work and home were conducted in an effort to manufacture evidence to support a criminal charge against her. This included, among other things, GASSMANN and THOMPSON visiting her child's daycare facility, interviewing daycare personnel as part of a purported investigation of Ms. Myles, and requesting records from the daycare facility, without probable cause or any other legitimate reason to do so except to retaliate against Plaintiff, harass her, harm her, discredit her, intimidate her, and embarrass her.

135. Additionally, without a warrant, GASSMANN acquired private banking information and records of Plaintiff and her husband in an effort to manufacture a criminal charge against her. GASSMANN did this without a warrant

and without probable cause or any other legitimate reason to do so except to retaliate against Plaintiff, harass her, harm her, discredit her, intimidate her, and embarrass her.

136.   Plaintiff had a reasonable expectation of privacy in her own home in that she kept personal property there  and her family, including her husband, child, and parents entrusted their privacy to Plaintiff. Plaintiff also had a reasonable expectation of privacy in the conduct of her own personal affairs and finances, including what she did in her own time, what she paid for, and caring for and providing for the care of her child. Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT did not have a reasonable belief that Plaintiff was committing a crime or violating agency policy or otherwise have a legitimate basis to expend extensive agency resources on the long-term surveillance of Plaintiff and her family.

137.   As detailed above, GASSMANN, TREVINO, THOMPSON, and LOVETT did instructed, authorized, encouraged, insisted and/or ratified the State Criminal Case against Plaintiff on the basis of false allegations without probable cause and did unlawfully procure a state arrest warrant for Plaintiff without probable cause. Additionally, on December 16, 2014, GASSMANN and THOMPSON arrested Plaintiff, knowing that they, along with others as detailed above, fabricated the factual basis of the criminal charge.

COMPLAINT FOR DAMAGES

138.   Based on the facts that GASSMANN, TREVINO, THOMPSON, and LOVETT fabricated the basis for the charge in the State Criminal Case against Plaintiff, they clearly lacked probable cause to issue the arrest warrant for Plaintiff, and thus lacked probable cause to seize Plaintiff under the Fourth Amendment. Thus, as a direct and proximate result of the actions of Defendants, in issuing the arrest warrant and then taking custody of Plaintiff under color of federal law, Plaintiff suffered an unreasonable seizure of her person, in violation of her Fourth Amendment right to be free from such seizures.

139.   Additionally, after Plaintiff's arrest, Defendant DEMORE approved, authorized, ratified and participated in the illegal seizure of Plaintiff's personal property belonging from her work station. Plaintiff's personal items included over twenty (20) boxes of perishable and non-perishable items including but not limited to work uniforms, clothing, books, electronics, appliances, prescription medications, protein powders, vitamins, food, and tea. Since Defendants were complicit in the conspiracy to initiate the criminal charge against Plaintiff without probable cause, they had no probable cause or legitimate basis to seize her personal property and to not treat those items with the utmost of care. Defendants or any agent of the Agency did not make arrangements for Plaintiff or her family to pack and retrieve them, did not provide notice to Plaintiff or her family what they would be doing with said items, and did not provide a seized property receipt for any of the property they took.  Once

Plaintiff was reinstated and returned back to duty in 2017, Defendants or any agent of the Agency made no efforts to return Plaintiff's personal property. The Agency did not honor Plaintiff's request to have the boxes delivered to her residence. Defendants' unlawful seizure of and reckless disregard of her personal property was done for no other purpose other than to retaliate against Plaintiff, harass her, embarrass her, intimidate her, and violate her constitutional rights.

140.   The conduct engaged in by Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, and DEMORE and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass, harm, and embarrass Plaintiff for all of the reasons set forth above and to violate her constitutional rights.

141.   The conduct of Defendants was malicious, justifying an award of punitive or exemplary damages against Defendants GASSMANN, TREVINO, THOMPSON, LOVETT, and DEMORE for the sake of example and by way of punishing them.

142.   As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending

herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

143. As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF THE FIFTH AMENDMENT

## [Denial of Substantive Due Process]

### (By Plaintiff Against GASSMANN, TREVINO, THOMPSON, and LOVETT, and Does 1-50)

144. Plaintiff hereby realleges and incorporates the allegations contained hereinabove as though fully set forth herein.

145.   This cause of action is brought pursuant to the authority of *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

146.   As a U.S. citizen, Plaintiff was guaranteed fundamental rights and liberty interests under the U.S. Constitution for which she was entitled to substantive due process of law under the Fifth Amendment. Those rights and liberty interests included, but were not limited to, physical liberty.

147.   As detailed above, GASSMANN, TREVINO, THOMPSON, and LOVETT did instruct, authorize, encourage, insist on filing and/or ratify the State Criminal Case against Plaintiff on the basis of false allegations without probable cause and did unlawfully procure a state arrest warrant for Plaintiff without probable cause. Additionally, on December 16, 2014, GASSMANN and THOMPSON arrested Plaintiff, knowing that they, along with others as detailed above, fabricated the factual basis of the criminal charge.

148.   Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT, DOES 1-50 violated Plaintiff's rights guaranteed by the Fifth Amendment to the United States Constitution by organizing, approving, authorizing, ratifying and causing the detainment of Plaintiff under color of law and to be physically taken into custody illegally, arbitrarily, and capriciously and without probable cause for the State Criminal Case, arrest, and detainment, in retaliation for Plaintiff's reports to her employer of harassment, discrimination, and

COMPLAINT FOR DAMAGES

misconduct, as detailed above.   Said Defendants deprived Plaintiff of her fundamental right to the constitutional right to liberty without due process under the Fifth Amendment to the United States Constitution.

149.   The conduct engaged in by Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above and to violate her constitutional rights.

150. The   conduct   of   Defendants   GASSMANN,   TREVINO, THOMPSON, and LOVETT is and was malicious, justifying an award of punitive or exemplary damages against Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT for the sake of example and by way of punishing them.

151.   As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and

future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

152.   As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

## TWELFTH CAUSE OF ACTION

## VIOLATION OF THE FOURTEENTH AMENDMENT

### [Right to Equal Protection]

**(By Plaintiff Against GASSMANN, TREVINO, THOMPSON, LOVETT, DEMORE, JACKSON, MARIN, and Does 1-50)**

153.   Plaintiff hereby realleges and incorporates the allegations contained hereinabove as though fully set forth herein.

154.   This cause of action is brought pursuant to the authority of *Bivens v Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971).

155.   The Fourteenth Amendment to the Constitution of the United States provides that no State shall "deny to any person within its jurisdiction the equal

protection of the laws." The equal protection clause secures every person against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by the improper execution of the law.

156.   Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT, DEMORE, JACKSON, MARIN, and Does 1-50 engaged in the above-described retaliatory acts against Plaintiff as result of their unlawful discrimination of her based on both her national origin and protected actions. Plaintiff at all relevant time periods was and is the only Immigration Enforcement Agent (IEA) and/or Deportation Officer (DO) at the DHS ICE Los Angeles Field Office of Chinese descent originating from Mainland China. Plaintiff is informed and believes, and based thereon alleges, that no other IEA and/or DO at the DHS ICE LAFO had the following actions taken against them: extensive surveillance and investigation for alleged overstated overtime hours, arrest of a federal employee based on state criminal charge of grand theft,  criminal prosecution by the OCDA for any employment-related allegation, maintenance of a state criminal case for three (3) years, perjury of various DHS officials in an effort to maintain the criminal case, extended period of suspension without pay, failure to restore an employee to proper pay grade after returning to duty after leave, and failure to restore the right to carry both service-issued and personal weapons after returning to duty after leave.

157.   Plaintiff is informed and believes, and based thereon alleges, that the aforementioned Defendants improperly utilized their positions of power and

investigatory and enforcement actions and procedures Plaintiff without ever having initiated such actions against any other IEA and/or DO working at the DHS ICE LAFO for like conduct. This preferential treatment for those persons who are not of Chinese descent from Mainland China, and those person(s) who did not report unlawful conduct of a supervisor, and the continued pattern of bad faith actions against Plaintiff, amounts to a violation of Plaintiff's Equal Protection rights.

158.   Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT, DEMORE, JACKSON, MARIN, and Does 1-50 violated Plaintiff's rights guaranteed by the Fourteenth Amendment to the United States Constitution. The conduct engaged in by Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT, DEMORE, JACKSON, MARIN, and Does 1-50 and described above was outrageous, unreasonable and shocks the conscience. Their purpose was to retaliate against Plaintiff, discredit her, and to intimidate, harass and embarrass Plaintiff for all of the reasons set forth above.

159.   The conduct of Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT, JACKSON, MARIN, DEMORE and Does 1-50  is and was malicious,  justifying an award of punitive or exemplary damages against Defendants GASSMANN, TREVINO, THOMPSON, and LOVETT, JACKSON, MARIN, DEMORE and Does 1-50   for the sake of example and by way of punishing them.

COMPLAINT FOR DAMAGES

160.   As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

161.   As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

///

///

///

COMPLAINT FOR DAMAGES

## **THIRTEENTH CAUSE OF ACTION**

### **Conspiracy to Interfere with Civil Rights - 42 U.S.C. §1985**

### **(By Plaintiff Against All Defendants)**

162.   Plaintiff hereby realleges and incorporates the allegations contained hereinabove as though fully set forth herein.

163.   Defendants, and each of them, as more specifically set forth above, engaged in the obstruction of justice, conspired to obstruct justice, and conspired to effectuate the deprivation of Plaintiff's rights under the First, Second, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, the corresponding sections of the California Constitution as well as statutory and common law rights as more specifically set forth herein.

164.   As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a

violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

165.   As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

166.   In committing the acts as alleged herein, the individual Defendants acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages as against the individual Defendants in an amount to be proven at the time of trial.

## FOURTEENTH CAUSE OF ACTION

### Violation of Civil Rights - 42 U.S.C. §1986

### (By Plaintiff Against All Defendants)

167.   Plaintiff hereby realleges and incorporates the allegations contained in Paragraphs 1 through 149, inclusive, as though fully set forth herein.

168.   Defendants and each of them having the power to prevent or to aid in preventing the commission of the acts more specifically set forth above, in preventing the commission of the acts more specifically set forth above, and having

neglected and refused to take such means available and necessary to so prevent or aid in preventing said acts, have violated the specific provisions of 42 U.S.C. § 1986.

169.   As a direct and proximate consequence of the conduct of Defendants' conduct more specifically set forth herein, Plaintiff suffered and continues to suffer great and serious emotional and psychological distress, economic loss and disadvantage, resulting in general and special damages, including but not limited to medical expenses, the attorney and other fees and costs incurred in defending herself against the meritless criminal charge against her, the forced sale of her real property that caused significant tax consequences, withdrawal of her retirement that also caused significant tax penalties, loss of personal property, loss of past and future earnings and loss of earning capacity and other financial losses, as well as a violation of her statutory and constitutional rights, in an amount to be proven at the time of trial.

170.   As a further and direct and proximate consequence of Defendants' conduct more specifically set forth herein, Plaintiff was required to retain the services of legal counsel to prosecute this case. Plaintiff has reasonably and necessarily incurred legal fees, and is informed and believed she will reasonably and necessarily incur legal fees in the future in an amount to be proven at the time of trial.

171.   In committing the acts as alleged herein, the individual Defendants acted with the intent to harm Plaintiff or with a conscious disregard for Plaintiff's

rights and thus acted with malice, fraud or oppression as defined in California Civil Code section 3294, entitling Plaintiff to an award of punitive damages as against the individual Defendants in an amount to be proven at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

1. General and compensatory damages in excess of $10,000,000, to be proven at trial, including but not limited to pain, suffering, anxiety, humiliation, loss of reputation, and emotional distress;

2. Special damages in excess of $1,000,500, to be proven at trial, including but not limited to: cost of personal items lost/destroyed; lost wages, benefits, and loss of pay grade, past and future earnings and earning capacity; supplemental health insurance premiums; withdrawal of savings on retirement, and forced sale of real property owned in order to fund Plaintiff's legal defense, and tax consequences and other damages resulting from said withdrawal(s)/sale; medical bills; and continuing attorneys' fees and legal costs.

3. Penalties and statutory fees;

4. Punitive damages against the individual Defendants;

5. Permanent injunction, pursuant to Fed. R. Civ. P. § 65, prohibiting the acts and conduct set forth above and institution and enforcement of

appropriate and additional rules, regulations and measures to prevent this kind of conduct from ever happening again;

6. Any and all damages not presently known and/or may be discovered;

7. Costs of suit; and,

8. For such other relief the court may deem just and proper.

WYNDER LAW INC.

Dated: October 23, 2019          By: _____
                                      Charlene J. Wynder, Esq.
                                      Attorney for Plaintiff
                                      KUI Z. MYLES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial of all issues triable by right to a jury.

WYNDER LAW INC.

Dated: October 23, 2019          By: _____
                                      Charlene J. Wynder, Esq.
                                      Attorney for Plaintiff
                                      KUI Z. MYLES

COMPLAINT FOR DAMAGES